**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FRESNO COMMUNITY HOSPITAL AND    )
MEDICAL CENTER dba CLOVIS COMMUNITY )
MEDICAL CENTER                       )
2755 Herndon Ave                   )
Clovis, CA 93611-6800,            )
                                    )
              Plaintiff,        )
                                    )
       v.                  )
                                    )
ROBERT F. KENNEDY JR., in his official capacity)
as Secretary, United States Department of   )
Health and Human Services,       )
200 Independence Avenue, S.W.     )
Washington, D.C. 20201,         )
                                    )
            Defendant.      )
_____ )

**COMPLAINT**

Plaintiff Fresno Community Hospital and Medical Center, dba Clovis Community Medical Center (the "Hospital" or "CCMC"), by and through its undersigned counsel, submits this Complaint for relief against defendant Robert F. Kennedy Jr., in his official capacity as Secretary of the Department of Health and Human Services (the "Secretary"), and alleges as follows:

**<u>INTRODUCTION</u>**

1.      In 2016, CCMC, a Medicare-participating hospital located in Clovis, California, filed jurisdictionally proper appeals with the Provider Reimbursement Review Board ("Board") challenging the Secretary's method for calculating a certain type of payments for inpatient care provided to Medicare beneficiaries during CCMC's fiscal year ("FY") 2013.  After the Supreme Court invalidated the Secretary's calculation method, the Secretary, through clear procedural errors, unlawfully deprived CCMC of its statutory right to a Board hearing on the appeal issue.

CCMC seeks an order of mandamus compelling the Secretary to remand its appeals to the Board and provide the hearing to which it is statutorily entitled.

2.     For more than two decades, the Secretary has unlawfully underpaid the amount of "disproportionate share hospital" or "DSH" payments to hospitals, including CCMC.  Congress enacted the Medicare DSH payment adjustment in recognition of the relatively higher costs associated with providing services to low-income patients.  The Secretary's underpayment at issue turns on the Secretary's characterization of certain inpatient hospital days for DSH payment purposes—specifically, days during the inpatient stay when the Medicare patient was enrolled in a Medicare "Part C" insurance plan and thus not participating in fee-for-service Medicare under "Part A."  If patients enrolled in Part C are characterized as "entitled to" Medicare Part A benefits under the Medicare statute, hospitals receive lower DSH payments; if Part C enrollees are characterized as not "entitled to" Part A benefits, hospitals receive higher DSH payments.  For many years leading up to 2004, the Secretary applied a policy that determined patients enrolled in Part C were not "entitled to" Medicare Part A benefits.  Yet, in 2004, the Secretary reversed this policy, in a "surprise switcheroo" first announced in a final rule,  to reduce hospitals' DSH payment amounts by asserting that Part C enrollees are "entitled to" Medicare Part A benefits.

3.     The Supreme Court disavowed this policy, affirming the D.C. Circuit's holding that the Secretary's 2004 policy had unlawfully circumvented notice and comment rulemaking requirements.  *Azar v. Allina Health Servs.*, 587 U.S. 566 (2019), *aff'g Allina Health Servs. v. Price*, 863 F.3d 937 (D.C. Cir. 2017) (opinions at all court levels in this case are referred to herein as "*Allina II*").

4.     CCMC's FY 2013 appeals progressed from the Board to this Court on "expedited judicial review" of the legal question of the lawfulness of the Secretary's Part C policy.  Yet,

following the Supreme Court's 2019 ruling invalidating the Part C policy, the Secretary obtained a remand of CCMC's FY 2013 appeals (and others) to await the promulgation of a new final rule concerning the Part C policy applicable to discharges prior to October 1, 2013, including the discharges included in CCMC's appeals.

5.    In June 2023, the Secretary reinstated his invalid (and vacated) 2004 rule through retroactive rulemaking and to determine hospital reimbursement under this same policy.  Medicare Program; Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage, 88 Fed. Reg. 37,772, *et seq.* (June 9, 2023).

6.    Further, and central here, after re-issuing retroactively the exact same Part C policy the Supreme Court had vacated, the Secretary took a series of actions to thwart hospitals' statutory right to Board hearings on their jurisdictionally proper appeals challenging the invalid Part C policy.  The Secretary did this by holding the appeals in limbo for over two years until after he reissued the Part C policy retroactively and then bypassing a remand of the appeals to the Board, sending them instead directly back to the Secretary's Medicare payment contractors for them to issue identical DSH payment determinations applying identical DSH variables rubberstamped under the Secretary's retroactively reinstated Part C days policy.  Thus, instead of providing hospitals, such as CCMC, the opportunity to obtain a statutorily mandated hearing on their longstanding appeals, the Secretary's charade sent hospitals back to square one, fully stripping hospitals of appeal rights, including potentially stripping the Hospital of the opportunity for an award of interest accruing for the roughly decade long-period based on the original appeals.

7.    CCMC files this action for a writ of mandamus to require the Secretary to carry out his clear duty to remand CCMC's FY 2013 original appeals to the Board to provide CCMC with its statutory right to a hearing on its original appeals of the Part C legal issue.  CCMC has no

alternative means at this time to obtain a hearing on this issue.  As such, CCMC seeks an order compelling the Secretary to remand CCMC's original appeals to the Board to allow CCMC to pursue a hearing challenging its FY 2013 Medicare DSH payments based on the Part C policy.

### JURISDICTION AND VENUE

8.      This Court has jurisdiction under 28 U.S.C. § 1361 (mandamus).

9.      Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(e).

### PARTIES

10.      The Plaintiff Hospital is Fresno Community Hospital and Medical Center, d/b/a Clovis Community Medical Center, Medicare Provider Number 05-0492.  At all times relevant to this action, the Hospital was qualified to participate in the Medicare program.  This action addresses determinations of the Hospital's Medicare payment for its FY 2013.

11.      Defendant Robert F. Kennedy, Jr., is sued in his official capacity as the Secretary of the Department of Health and Human Services.  The Department of Health and Human Services ("HHS") is responsible for administering the Medicare program, which it does through the Centers for Medicare & Medicaid Services ("CMS").

### GENERAL BACKGROUND OF THE MEDICARE PROGRAM

12.      The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease.  42 U.S.C. § 1395c.  The Medicare program is federally funded and administered by the Secretary through CMS and its contractors.  42 U.S.C. § 1395kk; 42 Fed. Reg. 13,282 (Mar. 9, 1977).

13.      CMS implements the Medicare program, in part, through the issuance of official Rulings.  *See* 42 C.F.R. § 401.108.  In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes numerous other interpretative rules implementing the Medicare program, which are compiled in one or more CMS Manuals.  The

Secretary also issues other subregulatory documents to implement the Medicare program, which generally do not have the force and effect of law.

14.    The Medicare Act, at 42 U.S.C. § 1395hh(a), prohibits the application of any rule or policy that establishes or changes a substantive legal standard governing the payment for service unless it is promulgated by the Secretary by notice-and-comment rulemaking.  In addition, the Medicare Act specifies that where a final rule "is not a logical outgrowth of a previously published notice of proposed rulemaking . . . , such provision shall be treated as a proposed regulation and shall not take effect."  42 U.S.C. § 1395hh(a)(4).  *Allina II*, 587 U.S. at 583.

15.    The Medicare program is divided into five parts: A, B, C, D, and E.  Part A of the Medicare program provides for coverage and payment for, among others, inpatient hospital services on a fee-for-service basis.  42 U.S.C. §§ 1395c *et seq*.  Part A services are furnished to Medicare beneficiaries by "providers" of services, including the Hospital, that have entered into written provider agreements with the Secretary, pursuant to 42 U.S.C. § 1395cc, to furnish hospital services to Medicare beneficiaries.  Part C of the Medicare program addresses how Medicare beneficiaries can obtain their Medicare benefits through a health plan, as opposed to under fee-for-service Medicare.  Medicare beneficiaries that join Part C plans still have Medicare, but they get their coverage and payment for hospital services from the plan, and not fee-for-service Medicare.

16.    CMS pays providers participating in Part A of the Medicare program for covered services rendered to Medicare beneficiaries through "Medicare Administrative Contractors" ("Medicare contractor"), which are agents of the Secretary.  Each Medicare-participating hospital is assigned to a Medicare contractor.  42 U.S.C. § 1395h.  The amount of the Medicare Part A

payment to a hospital for services furnished to Medicare beneficiaries is determined by its Medicare contractor based on instructions from CMS.

## THE MEDICARE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEM

17.    Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted the hospital inpatient prospective payment system ("IPPS") to reimburse hospitals, including the Hospital, for inpatient hospital operating costs. Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments. One of these adjustments is the Medicare "disproportionate share hospital" or "DSH" payment. *See* 42 U.S.C. § 1395ww(d)(5)(F). This Complaint addresses DSH payments based on the rules applicable to patient discharges before October 1, 2013.

## THE MEDICARE DSH ADJUSTMENT

18.    Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a DSH adjustment, in addition to standard Medicare payments. 42 U.S.C. § 1395ww(d)(5)(F). Congress enacted the DSH adjustment in recognition of the relatively higher costs associated with providing services to low-income patients. These higher costs have been found to result from the generally poorer health of low-income patients. The DSH adjustment provides additional Medicare reimbursement to hospitals for the increased cost of providing services to their low-income patients.

19.    There are two methods of determining qualification for a DSH adjustment: the more common "proxy method" (42 U.S.C. § 1395ww(d)(5)(F)(i)(I)) and the less common "Pickle method" (42 U.S.C. § 1395ww(d)(5)(F)(i)(II)). The Hospital's DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount

of the DSH payment, is based on the hospital's "disproportionate patient percentage" ("DPP").  42 U.S.C. § 1395ww(d)(5)(F)(v) and (vi).

20.     The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days").  Thus, the two fractions serve as a "proxy" to determine low-income patients, rather than having CMS count the actual number of such patients.

21.     The first fraction, referred to as the "Medicare/SSI fraction," accounts for inpatients who are current Medicare Part A recipients and also entitled to benefits under SSI, a federal low-income supplement.   The Medicare/SSI fraction is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) *were entitled to benefits under Part A of this subchapter* and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) *were entitled to benefits under Part A of this subchapte*r.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added).  The Medicare/SSI fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time that they were receiving inpatient services at the hospital.  The terms "Medicare" and "SSI," and "ratio," "fraction," "proxy" and "percentage" are all used interchangeably throughout various sources to describe the fraction set forth in 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).  For consistency, the term "Medicare/SSI fraction" is used herein.

22.     The second fraction, referred to as the "Medicaid fraction," is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were *eligible* for medical assistance under a State plan approved under title XIX, but who were *not entitled to benefits under Part A of this title*, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).  The Medicaid fraction, therefore, is intended to account for hospital inpatients "who were not entitled to benefits under [Medicare] Part A," but who were "eligible for medical assistance" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital.

### MEDICARE PART C

23.    Section 4001 of the Balanced Budget Act of 1997 ("BBA"), Pub. Law No. 105-33, added a new Part C to Title XVIII of the Social Security Act to establish the Medicare+Choice program to allow Medicare beneficiaries to obtain their Medicare benefits through a private health plan, instead of through fee-for-service Medicare.  The Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. Law No. 108-173, replaced the Medicare+Choice program with the new Medicare Advantage program, also under Part C.  For consistency, all plans authorized under Part C are referred to herein as "Part C plans."

24.    A Medicare beneficiary can elect to receive Medicare benefits *either* through the original fee-for-service program under Medicare Part A, *or* through enrollment in a Part C plan, but not both simultaneously.  42 U.S.C. § 1395w-21(a)(1); 42 C.F.R. § 422.50; *see also* 63 Fed. Reg. 34,968 (June 26, 1998) ("Under section 1851(a)(1), every individual entitled to Medicare Part A and enrolled under Part B . . . may elect to receive benefits through *either* the existing Medicare fee-for-service program *or* a Part C [Medicare Advantage] plan.") (emphasis added).  In order to be eligible to enroll in a Part C plan, an individual must be entitled to benefits under Part A.  42 U.S.C. § 1395w-21(a)(3)(A).  Once a Medicare beneficiary individual enrolls in a Part C

plan, the beneficiary "is entitled to elect to receive benefits under [the Medicare statute] . . . through enrollment in a [Medicare Advantage] plan under this part [C]" and, thus, is no longer entitled to payment of benefits under Medicare Part A.  42 U.S.C. § 1395w-21(a)(1)(B).

25.    The Secretary makes Part C payments to the Part C plan "instead of the amounts which (in the absence of the contract) would otherwise be payable under parts A and B of this subchapter for items and services furnished to the individual." 42 U.S.C. § 1395w-21(i)(1); *see also* 63 Fed. Reg. 34,968 (June 26, 1998) ("Under section 1851(a)(1), every individual entitled to Medicare Part A and enrolled under Part B . . . may elect to receive benefits through either the existing Medicare fee-for-service program or a Part C plan.").  It is the responsibility of the Part C plan to pay the amount due to providers for the services provided to Medicare beneficiaries enrolled in the Part C plan.

26.    Thus, payments for Part C enrollees are made under Part C, rather than under Parts A or B.  42 U.S.C. § 1395w-21(a)(1)(B).  Accordingly, Medicare patients who elect to receive Medicare benefits through enrollment in a Part C plan are no longer "entitled to benefits under part A," because they are not entitled to have payment made under part A.  *See* 42 U.S.C. § 426(c) (defining entitlement to benefits under Part A as "entitlement to have payment made under, and subject to the limitations in, part A") and 42 U.S.C. § 1395d(a) (stating that the benefits provided under Medicare Part A "consist of [an individual's] entitlement to have payment made on his behalf" for services covered under Part A).

## HOW THE SECRETARY HAS ACCOUNTED FOR PART C DAYS IN THE MEDICARE/SSI FRACTION AND THE MEDICAID FRACTION

27.    When a hospital provides inpatient services to a Part C plan enrollee, these inpatient days are referred to as "Part C days" for DSH purposes.  Prior to October 1, 2004, it was the Secretary's policy and practice characterize patients enrolled in Part C as not "entitled to"

Medicare Part A benefits, and accordingly, to not include Part C days in the Medicare/SSI fraction. *Allina Health Services v. Sebelius* ("*Allina I*"), 746 F.3d 1102, 1106 (D.C. Cir. 2014) (Before May 2003, "the Secretary treated Part C patients as *not* entitled to benefits under Part A.").

28.     Consistent with that long-standing practice, in the Secretary's federal fiscal year ("FFY") 2004 (FFYs start on October 1 and end the next September 30) IPPS Proposed Rule, the Secretary "propos[ed] to *clarify*" that Part C days "*should not be included in the Medicare fraction.*" 68 Fed. Reg. 27,154, 27,208 (May 19, 2003) (emphasis added).  In that proposed rule, CMS reasoned that "once a beneficiary has elected to join a Medicare Advantage plan, that beneficiary's benefits are no longer administered under Part A." *Id*.  CMS also proposed to permit hospitals to count inpatient days for Medicaid-eligible Medicare Part C plan enrollees in the numerator of the Medicaid fraction.  *Id*.

29.     The Secretary did not act on this proposal in the FFY 2004 IPPS Final Rule.  *See* 68 Fed. Reg. 45,346, 45,422 (August 1, 2003).  The Secretary also did not address this proposal related to Part C days in the FFY 2005 IPPS Proposed Rule, which was published in the Federal Register in May 2004.  Despite not addressing the proposal in the FFY 2005 IPPS Proposed Rule, and in a complete reversal of the policy stated in the FFY 2004 IPPS Proposed Rule, in the FFY 2005 IPPS Final Rule, CMS pulled a "surprise switcheroo," *Allina I*, 746 F.3d at 1108 (quoting *Environmental Integrity Project v. E.P.A.*, 425 F.3d 992, 996 (D.C.Cir.2005)): CMS "adopt[ed] a policy" to include Part C days in the Medicare/SSI fraction, and exclude these days from the numerator of the Medicaid fraction, and stated that it was "revising" its regulations to reflect this policy effective October 1, 2004.  69 Fed. Reg. 48,916, 49,099 (August 11, 2004).  The Secretary's sole explanation for this 180-degree reversal was that Part C plan enrollees "are still, in some sense, entitled to benefits under Part A."  *Id.*

30.     Thereafter, in Change Request 5647, Transmittal No. 1311 (Jul. 20, 2007) at 8, CMS stated that "[p]atients who are enrolled in [Part C] . . . should also be included in the Medicare fraction."   With an implementation date of January 7, 2008, the change request directed that "hospitals . . . begin to submit 'no pay' bills to their Medicare contractor for the [Part C] beneficiaries they treat, in order for these days to be *eventually* captured in the DSH . . . calculations."   *Id.* at 1 (emphasis added).   CMS revised the Medicare Claims Processing Manual to state: "[H]ospitals may go back and submit claims with discharge dates on or after October 1, 2006 (FY 2007), *so that SSI data for FY 2007 and beyond will include MA [i.e., Medicare Advantage or Medicare Part C] patient days.*"   *Id.* at 2 (emphasis added); *see also* Medicare Claims Processing Manual (CMS Pub. 100-04) Ch. 3 § 20.3, (requiring hospitals to submit informational only bills to "ensure that these days are included in the SSI [fraction] for Fiscal Year 2007 and beyond").

31.     In the FFY 2008 IPPS Final Rule, which CMS published in the Federal Register in August 2007, the agency stated that it had "inadvertently" failed to revise the regulation in 2004 and was doing so at that time to conform to the alleged 2004 "policy change."   72 Fed. Reg. 47,130, 47,384 (August 22, 2007) (amending portions of the DSH regulation to include in the numerator and denominator of the Medicare/SSI fraction days relating to patients who are "entitled to Medicare Part A *(or Medicare Advantage (Part C))*."   *Id.* at 47,411 (amending § 412.106(b)(2)(i)(B) and (iii)(B)) (emphasis added).   By revising the DSH regulation in the FFY 2008 IPPS Final Rule, without first explaining the rationale for doing so in the FFY 2008 IPPS Proposed Rule, the Secretary did not meet the notice-and-comment provisions of the APA.

32.     In the FFY 2014 IPPS Proposed Rule, which was published in the Federal Register in May 2013, CMS presented its proposal to "readopt" the 2004 rule (with the 2007 revisions), to

attempt to satisfy the APA's notice-and-comment rulemaking requirements for FFY 2014 and subsequent FFYs. 78 Fed. Reg. 27,486, 27,578 (May 10, 2013). CMS asserted in the FFY 2014 IPPS Final Rule that the agency was, indeed, "readopting" the 2004 rule (allegedly codified in 2007). 78 Fed. Reg. 50,496, 50,614 (August 19, 2013). This new rule applied only prospectively.

## LITIGATION REGARDING THE SECRETARY'S ACCOUNTING FOR PART C DAYS IN THE MEDICARE/SSI FRACTION AND THE MEDICAID FRACTION

### A. Initial Challenges to Secretary's Treatment of Part C Days

33.    The Secretary's 2004 change in policy (effective with the start of FFY 2005) has been subject to several legal challenges. In *Northeast Hospital Corporation v. Sebelius*, 657 F.3d 1 (D.C. Cir. 2011), a hospital appealed the application of the new policy of including Part C days in the Medicare/SSI fraction retroactively to the hospital's DSH payments for FFYs 1999–2002. The D.C. Circuit held that CMS had changed its practice and policies concerning including Part C days in the Medicare/SSI fraction in 2004, and the 2004 policy could not be applied retroactively to periods before the October 1, 2004 effective date. *Id*. at 17.

34.    In *Allina I*, *supra*, which involved FFY 2007, the D.C. Circuit held that CMS had failed to follow the APA and the Medicare Act when attempting to adopt a regulation in 2004 that suggested Part C inpatient days will be (or should be) included in the Medicare/SSI fraction and excluded from the Medicaid fraction, because it was not a "logical outgrowth" of the proposed rule suggesting the opposite. *Allina I*, however, arguably left open the possibility that CMS could attempt to "repair" the identified deficiencies in the 2004 rulemaking process by implementing the new policy through an adjudicatory process. *Allina I* was remanded to the Secretary for further proceedings.

35.    On remand in *Allina I*, the December 2, 2015 final "Decision of the [CMS] Administrator" purported to explain why the 2004 rule change had been properly supported by the

administrative record of the rulemaking and why, in any event, the "change" in CMS policy was not actually a substantive modification of policy, but rather a clarification of the agency's interpretation, which could be applied even in the absence of notice-and-comment rulemaking. *See Allina Health Servs., et al.*, *v. Sebelius*, No. 1:10-cv-01463-RMC, CMS Adm'r Dec. (D.D.C. Dec. 2, 2015). In response, the *Allina I* plaintiff-hospitals filed a new lawsuit in this Court to challenge this 2015 CMS Administrator's final decision.

36. Meanwhile, the *Allina* hospital plaintiff group had already filed a separate lawsuit in this Court, *Allina II*, to challenge the Secretary's application of the 2004 rule (already vacated by *Allina I*) to the hospitals' DSH payments for FFY 2012. *See Allina Health Servs. v. Burwell*, 201 F. Supp. 3d 94 (D.D.C. 2016), *rev'd* 863 F.3d 937, *aff'd* 587 U.S. 566. The hospitals in *Allina II* contended that the Secretary violated two independent provisions of the Medicare Act by including Part C days in the hospitals' Medicare/SSI fractions for FFY 2012. The D.C. Circuit agreed, not only reiterating that the 2004 rule was invalid but also stating that "HHS violated the Medicare Act when it changed its reimbursement adjustment formula without providing notice and opportunity for comment." *Allina II*, 863 F.3d at 938.

37. Significantly, the D.C. Circuit also suggested that the Secretary could not "repair" the deficiencies in the 2004 <u>rulemaking</u> process by implementing the new policy through an <u>adjudicatory</u> process, stating, contrary to the earlier decision in *Allina I,* that the Secretary "could not circumvent this requirement [to conduct notice and comment rulemaking] by claiming that it was acting by way of adjudication rather than rulemaking." *Id.* at 945. The D.C. Circuit also noted that, because its prior ruling vacated the 2004 rule, "HHS can no longer rely on the 2004 interpretation." *Allina II*, 863 F.3d at 939.

38.     The Secretary petitioned for both panel rehearing and rehearing *en banc* in *Allina II*, both of which petitions were denied.  On April 27, 2018, the Secretary filed a petition for certiorari to the Supreme Court of the United States, and the Supreme Court granted the Secretary's petition on September 27, 2018.  On June 3, 2019, the Supreme Court affirmed the decision of the D.C. Circuit in *Allina II*.  587 U.S. 566 (2019).[1]

**B.  Hospitals Filed Many Additional Board Appeals Challenging the Pre-FFY 2014 Part C policy**

39.     Under the Medicare program, Medicare contractors, which are insurance companies hired by the Secretary, manage hospital Part A payments.  Each hospital's designated Medicare contractor is required to analyze and audit the hospital's annually submitted Medicare cost report covering Medicare discharges during the hospital's FY and issue a final determination "of total program reimbursement due" the hospital is due—this document is known as a "notice of program reimbursement" or "NPR."  *See* 42 U.S.C. § 1395oo(a).

40.     The Medicare statute gives a hospital dissatisfied with the final determination in the NPR the right to obtain a hearing before Board, provided amount in controversy and an appeal is timely filed appeal within 180 days of receiving its NPR.  42 U.S.C. § 1395oo.

41.     While the *Allina* cases progressed through the courts, many other hospitals, including CCMC, received NPRs for fiscal years negatively impacted by the Secretary's invalid

---

[1] On remand from the Supreme Court and the D.C. Circuit, this Court entered judgment in favor of the plaintiffs in *Allina II*, vacated the Medicare/SSI fractions to be used in calculating the plaintiffs' DSH payments, and remanded the case to the Secretary for further proceedings consistent with the law established by the *Allina II* case.  *See* Order, *Allina II*, No. 14-cv-1415 (D.D.C. Sept. 4, 2019), ECF No. 58 at 2.  Further actions have ensued in *Allina II* to attempt to enforce this Court's judgment against the Secretary's 2023 Final Action (discussed *infra*).  *See* Order, *Allina II*, No. 14-cv-1415 (D.D.C. July 22, 2023), ECF No. 71, *appealed*, 23-5215 (D.C. Cir.) (held in abeyance pending disposition of cases challenging the Secretary's 2023 Final Action).

Part C days policy, and availed themselves of their statutory right to file appeals with the Board challenging their Medicare payments as understated.

42.    When a hospital is entitled to a Board hearing, the Board may, at the hospital's request or *sua sponte*, grant "expedited judicial review" when the Board lacks the authority to decide a question of law or regulations relevant to the appeal.  *See* 42 U.S.C. § 1395oo(f)(l).  In many of the Board appeals challenging the Secretary's invalid Part C days policy, the Board granted expedited judicial review, because the Board lacks the authority to adjudicate the validity of the Secretary's Part C days policy.  *See* 42 C.F.R. § 405.1867.

43.    Following the Board's grants of expedited review in these appeals, numerous hospitals, including CCMC, filed complaints in federal court.  *See, e.g.*, *Fresno Community Hosp. & Med. Ctr. v. Azar*; Case No. 1:19-cv-01224 (D.D.C.) (CCMC's FFY 2013 challenge to the Secretary's treatment of Part C Days with respect to calculation of the Medicare/SSI Fraction); *Aiken Reg'l Med. Ctrs. v. Azar*, 1:20-cv-01097 (D.D.C.) (CCMC's FFY 2013 challenge to the Secretary's treatment of Part C Days with respect to calculation of the Medicaid Fraction).  Many of these cases, including CCMC's, were ultimately consolidated with other Part C Day challenges, *see In re: Allina II-Type DSH Adjustment Cases*, 1:29-mc-00190 (D.D.C.).

44.    After the Supreme Court's June 3, 2019 affirmance in *Allina II* that the Secretary's Part C Days Policy was procedurally invalid, the Secretary moved for a voluntary remand of the consolidated Part C Day challenges "so that he [could] re-examine these claims in light of the Supreme Court's decision and take further action as necessary to comply with the applicable legal standards announced therein."  *See* Def.'s Mot. for Voluntary Remand, *In re: Allina II-Type DSH Adjustment Cases*, Case No. 1:19-mc-00190 (D.D.C.) (Nov. 15, 2019), ECF 4 (attached as Exhibit 1).  Several hospitals, including CCMC, opposed this request for remand.  *See* Mem. in Opp. to

Def.'s Mot. for Voluntary Remand, *In re: Allina II-Type DSH Adjustment Cases*, Case No. 1:19-mc-00190 (D.D.C.) (Dec. 2, 2019), ECF 9 (attached as Exhibit 2).

45.    On January 19, 2021, the court granted the Secretary's motion for a voluntary remand, and Part C Days appeals were remanded to the Secretary in two orders.  *See* Order, *In re: Allina II-Type DSH Adjustment Cases*, Case No. 1:19-mc-00190 (D.D.C.) (Jan. 19, 2021), ECF 74 (attached as Exhibit 3, with included exhibit); Order, *In re: Allina II-Type DSH Adjustment Cases*, Case No. 1:19-mc-00190 (D.D.C.) (March 12, 2021), ECF 99 (attached as Exhibit 4).

## THE PROPOSED RULE AND FINAL ACTION TO ADDRESS *ALLINA*

46.    In response to *Allina II*, on August 6, 2020, CMS issued a proposed rule entitled "Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage," 85 Fed. Reg. 47,723 (August 6, 2020) ("the Proposed Rule").  The Proposed Rule purported to "create a policy governing the treatment of days associated with [Medicare] beneficiaries enrolled in Medicare Part C for discharges occurring prior to October 1, 2013, for purposes of determining" DSH payments in light of the decision of the Supreme Court in *Allina II*.  *Id.* at 47,723.  The Proposed Rule asserts that, as a result of *vacatur* of the 2004 rule, CMS had no rule governing the treatment of Part C days and must engage in retroactive rulemaking.  *Id.* at 47,424–25.  However, the Proposed Rule fails to account for the pre-2004 rule that still governs the treatment of Part C days in the DSH payment in light of the 2004 rule's *vacatur*.  *Id.* at 47,725.

47.    The Secretary finalized the DSH Part C Days treatment as proposed on June 9, 2023 (the "Final Action").  *See* Medicare Program; Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage, 88 Fed. Reg. 37,772, *et seq.* (June 9, 2023).  The Final Action readopts CMS's vacated 2004 rule and makes it retroactive to cover all dates of service prior to October 1, 2013.  Other hospitals have pending litigation challenging the substantive and procedural validity of the readopted, retroactive Part C days policy.

16

*See, e.g.*, *Montefiore Medical Center v. Kennedy*, No. 24-cv-1810 (D.D.C.) (summary judgment briefing in progress).

## REVIEW OF HOSPITAL MEDICARE PAYMENTS

### A. Agency Review

48.     As discussed previously, if a hospital is dissatisfied with the Medicare Contractor's final determination of the total amount of IPPS reimbursement due the hospital, the Medicare statute grants the hospital a right to obtain a hearing before the Board, so long as the hospital files an appeal with the Board within 180 days of receiving its NPR and the disputed amount satisfies the amount-in-controversy threshold.  42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835(a).

49.     Upon receiving the Board's final decision, hospitals have a right to seek judicial review of that decision by filing suit within 60 days in the United States District Court for the judicial district in which the hospital is located, or in the United States District Court for the District of Columbia.  42 U.S.C. § 1395oo(f)(1).

50.     The Board is bound by, and hence lacks the authority to adjudicate the validity of, the Medicare statute, regulations under the Medicare statute, and CMS Rulings issued under the authority of the CMS Administrator.

51.     Because the Board lacks authority to adjudicate the validity of the Medicare statute or regulations promulgated under it, where a hospital is entitled to a Board hearing, the hospital may request that the Board determine that it lacks authority to decide a question of law or regulations relevant to the appeal.  If the Board makes this determination, it must certify the case for expedited judicial review.  42 U.S.C. § 1395oo(f)(l); 42 C.F.R. § 405.1842.  In the event that the Board grants expedited judicial review, the hospital may file suit in federal district court seeking judicial review within 60 days.  *See* 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842(g)(2).

52.     Within three years from the date that the Board dismisses an appeal or receives a provider's withdrawal of an issue, the Board may reinstate the appeal.  *See* Board Rule 47.1.  When the Board reinstates an issue or case, the provider has the same rights (no greater and no less) than it had in its initial appeal.  *Id.*

### B.  Court Review

#### 1.  Judicial Review Under the Medicare Act

53.     As made applicable to the Medicare statute (*see* 42 U.S.C. § 1395ii), 42 U.S.C. § 405(h) divests the district courts of federal-question jurisdiction to hear "any claim arising under" the Medicare statute, and bars any "decision of the [Secretary of HHS]" from being judicially reviewed, "except as herein provided."

54.     The exception "herein provided" is created by 42 U.S.C. § 405(g).  This provision, although not expressly incorporated into the Medicare statute under § 1395ii, has been treated by the Supreme Court as such.  *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 7-9 (2000); *Heckler v. Ringer*, 466 U.S. 602, 614-615 (1984); *see also Am. Hosp. Ass'n v. Azar*, 895 F.3d 822 (D.C. Cir. 2018).  Section 405(g), as made applicable to the Medicare statute, authorizes any person to file a civil action, "after any final decision of the [Secretary of HHS] made after a hearing to which he was a party," to "obtain a review of such decision" in federal district court.

55.     Courts have interpreted Section 405(g) to impose two requirements for obtaining judicial review of Medicare claims.  The first, which is jurisdictional and hence not waivable, requires that the plaintiff have "presented" the claim to the Secretary of HHS.  *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976); *Am. Hosp.*, 895 F.3d at 825.  The second, which is waivable, is that the plaintiff must have exhausted the "administrative remedies prescribed by the Secretary." *Mathews*, 424 U.S. at 328; *Am. Hosp.*, 895 F.3d at 826.

56.     The D.C. Circuit has held that the futility of exhausting the administrative review process may be an independently sufficient ground for waiver of the exhaustion requirement. *See Tataranowicz v. Sullivan*, 959 F.2d 268, 275 (D.C. Cir. 1992). Exhaustion of the administrative review process may be futile where, for example, there are no facts in dispute and the only issue is a purely legal question. *See id.* at 274. Waiver of exhaustion is proper where judicial resolution of the claim at issue "(1) will not interfere with the agency's efficient functioning; (2) will not thwart any effort at self-correction; (3) will not deny the court or parties the benefit of the agency's experience or expertise; and (4) will not curtail development of a record useful for judicial review." *Id.* at 275.

57.     The Supreme Court has also held that "[section] 1395ii does not apply § 405(h) where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 19 (2000); *see also Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 681 n.12 (1986).

58.     Under the Medicare Act, "[w]here a provider seeks judicial review pursuant to [42 U.S.C. § 1395oo(f)(1)], the amount in controversy ***shall*** be subject to annual interest . . . to be awarded ***by the reviewing court*** in favor of the prevailing party." 42 U.S.C. § 1395oo(f)(2) (emphasis added). This annual interest calculation begins "on the first day of the first month beginning after the 180-day period as determined pursuant to [42 U.S.C. § 1395oo(a)(3)]," which, as relevant here, is defined as 180 days after notice of the Medicare contractor's final determination. *Id.* at §§ 1395oo(a)(3); 1395oo(f)(3). The annual interest rate is "equal to the rate of interest on obligations issued for purchase by the Federal Hospital Insurance Trust Fund ***for the month in which the civil action . . . is commenced***." § 1395oo(f)(3) (emphasis added).

2.  <u>Judicial Review Under the Mandamus Act</u>

59.    The Mandamus Act grants district courts jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.

60.    In the D.C. Circuit, jurisdiction under the Mandamus Act is available even in circumstances where federal-question jurisdiction or other statutory jurisdiction would be precluded by 42 U.S.C. § 405(h).  *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 813 (D.C. Cir. 2001) ("joining the virtual unanimity of circuit courts" holding "that § 1361 jurisdiction is not barred" by Section 405(h)).  Courts have emphasized that mandamus jurisdiction is particularly appropriate where the plaintiff brings a procedural challenge unrelated to substantive questions of entitlement to Medicare benefits.  *See Burnett v. Bowen*, 830 F.2d 731, 738 (7th Cir. 1987); *Lopez v. Heckler*, 725 F.2d 1489, 1507 (9th Cir. 1984), *vacated and remanded on other grounds*, 469 U.S. 1082 (1984); *Belles v. Schweiker*, 720 F.2d 509, 512–13 (8th Cir. 1983).

61.    Jurisdiction under the Mandamus Act is available if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff."  *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) (quoting *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)).  If all jurisdictional requirements are met, a court may grant relief under 28 U.S.C. § 1361 "when it finds compelling equitable grounds." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (quoting *In Re Medicare Reimbursement*, 414 F.3d at 10).

## PROCEDURAL BACKGROUND

### A.  <u>Original Appeals</u>

62.    On November 23, 2015, the Medicare contractor issued an NPR for the Hospital's FY 2013 cost report.  On April 7, 2016, the Hospital filed jurisdictionally proper Board appeals

challenging its Medicare DSH payments on the basis of the Secretary's invalid Part C days policy, in accordance with 42 U.S.C. § 1395oo. The Hospital appealed the impact of the Part C policy separately as to its DSH Medicare/SSI fraction and its DSH Medicaid fraction, as was required by Board Rules at the time.

63.    The Hospital sought expedited judicial review, and the Board, after confirming that it had jurisdiction for the appeals, granted expedited judicial review on April 24, 2019 (in Case No. 16-1393GC, comprising the Hospital's challenge to its Medicare/SSI Fraction Expedited Judicial Review Determination, attached as Exhibit 5), and March 12, 2020 (in Case No. 16-1403GC, comprising the Hospital's challenge to its Medicaid Fraction Expedited Judicial Review Determination, attached as Exhibit 6).

64.    The Hospital subsequently filed complaints in this Court seeking to set aside the invalidly determined DSH payments based on the invalid Part C policy. *See Fresno Community Hosp. & Med. Ctr. v. Azar*; Case No. 1:19-cv-01224 (D.D.C.) (Medicare/SSI Fraction); *Aiken Reg'l Med. Ctrs. v. Azar*, 1:20-cv-01097 (D.D.C.) (Medicaid Fraction). These actions were consolidated with actions brought by other hospitals also challenging DSH payments determined using the invalid Part C days policy, *see In re: Allina II-Type DSH Adjustment Cases*, 1:29-mc-00190 (D.D.C.), and they were remanded in January and March of 2021 when the Court granted the Secretary's Motion for Remand, *see* Exhibit 3; Exhibit 4.[2]

65.    More than two years later, and shortly after CMS issued the Final Action retroactively reinstating the Part C days policy, on June 16, 2023, the CMS Administrator issued an order (attached as Exhibit 7) to act on the cases that had been remanded from federal court. The

---

[2] As noted *supra*, the Hospital opposed this request for remand. *See* Exhibit 2.

CMS Administrator's Order remanded the Hospital's Part C days Board appeals directly to the Medicare Contractor to issue revised determinations, subject to review.

66.    In doing so, the CMS Administrator's Order bypassed the typical procedural route of remanding the appeals to the Board to be reinstated for further proceedings.  Indeed, it is appropriate for the Secretary to remand to and reinstate at the Board a case that has been remanded from the district court, including once the court has decided the question of law or regulations relevant to the appeal.  *See* 42 C.F.R. § 405.1877(g) (requiring the CMS Administrator, "upon receiving notification of a court remand order," to "prepare an appropriate remand order" which must "remand the matter to the appropriate entity for further action"); *see also* Order of the CMS Administrator, *Pomona Valley Hospital Med. Ctr. v. Becerra*, Board Case Nos. 13-0430, 13-0628, 13-0680 (Dec. 15, 2023) (remanding the cases directly to the Board following a decision and remand against the Secretary by the D.C. Circuit).

67.    Instead, the CMS Administrator remanded the appeals directly back to the Secretary's Medicare payment contractors for them to issue identical DSH payment determinations.  In other words, the CMS Administrator required hospitals to open new appeals to continue to pursue their unresolved challenge to their identically determined DSH fractions, stripping them of their rights to a hearing on their original appeals and, should they ultimately prevail on the merits, potentially wiping out interest accruing during the eight year period from 180 days after the final determinations that were the basis for the original appeals.

B.    **The Hospital Exhausted Available Administrative Remedies, Which Were Inherently Inadequate**

68.    On April 12, 2024, the Medicare contractor issued a "revised" determination to the Hospital, mechanically applying the identical DSH fractions determined under the Secretary's renewed, retroactive Part C days policy that the contractor had applied almost a decade previously.

Although the Secretary states this comprises a "revised" determination, this hocus-pocus act effected no change in either the Hospital's DSH fractions or its DSH payments.

69.     The Secretary, in the CMS Administrator's Remand Order, stated that hospitals have the right to file new Board appeals from the contractors "revised" determinations.  Exhibit 7 at 3.  However, such an offer to file fresh appeals is inherently inferior to reinstatement of the previously existing appeals for several reasons, including (1) filing a new Board appeal requires hospitals to incur the significant time and expense they already incurred with the original appeal, and (2) because the new appeal is based on a "revised" but identical determination issued many years after the determination at issue in the original appeal, the Secretary is expected to argue that the new determination marks the start of the period for potential accrual of interest.

70.     The Hospital filed an appeal of the revised determination on November 22, 2024, 44 days beyond the 180-day Board appeal deadline.  Recognizing the untimeliness of this appeal, the Hospital filed with the Board a request for extension of the filing period, explaining that good cause exists to allow the late appeal filing because: CMS has been on notice of the Hospital's appeal of the Part C Days issue for more than eight years, and due to CMS's own actions, the Hospital has never received a hearing as provided under 42 U.S.C. § 1395oo; the Board has authority to waive or modify the 180 day filing deadline; the Hospital is statutorily entitled to a hearing on its original, jurisdictionally valid appeal under 42 U.S.C. § 1395oo(a); and a 44-day extension would not prejudice CMS, and would pale in comparison to the three-plus years that CMS took to implement the district court's remand orders and issue revised determinations.  *See* Hospital's Request for Extension to File Appeal, Board Case No. 25-0885GC (attached as Exhibit 8, without enclosures).

71.     On January 15, 2025, the Board denied the Hospital's Request for Extension to File Appeal, finding that "none of the reasons presented rise to the level of a good cause to grant extension of the time limit to file an appeal."  Board Decision Re: Request for Extension to File Appeal and Dismissal of Provider, Board Case No. 25-0885GC (Jan. 15, 2025) (attached as Exhibit 9).  Thus, the Board dismissed the Hospital's 2024 appeal of the Part C Days Issue for its FYE 2013.  *Id.*

72.     On March 7, 2025, the Hospital submitted a request to the CMS Administrator, requesting that the CMS Administrator reopen the June 16, 2023 decision to remand the Hospital's original appeals directly to the Medicare contractor and instead, order that the original appeals be remanded first back to the Board (attached as Exhibit 10, without enclosures).  The Hospital explained that doing so was necessary to ensure the Hospital is able to access its statutory right to obtain a hearing on its original appeals including avoiding any question that interest would accrue based on the final determination that was the basis for the original appeals, and proper under CMS Ruling 1739-R and 42 C.F.R. § 405.1877(g)(2).  The CMS Administrator has not yet ruled on this request.

73.     Following the dismissal, the Hospital has no administrative path to obtain the hearing to which it is statutorily entitled, based on its original, jurisdictionally valid appeal, and no ability to obtain review of the proper treatment of Medicare Part C days in its DSH calculations for FY 2013.

## THE HOSPITAL IS ENTITLED TO, AND UNABLE TO RECEIVE, A HEARING UNDER 42 U.S.C. § 1395oo(a)

74.     The Secretary has stripped the Hospital of its statutorily-entitled hearing on its original appeals under 42 U.S.C. § 1395oo(a).

75. The Board has already found that CCMC satisfied the jurisdictional prerequisites for a Board appeal. *See* Exhibit 5 at 8 ("The Board finds that . . . [i]t has jurisdiction over the matter for the subject years and that the participants in these group appeals are entitled to a hearing before the Board"); Exhibit 6 at 10 ("The Board finds that . . . [i]t has jurisdiction over the matter from the original NPR's[] for the subject years and that the remaining participants in these group appeals are entitled to a hearing before the Board"). Therefore CCMC "***may obtain a hearing with respect to such cost report*** by [the Board]," § 1395oo(a) (emphasis added).

76. Yet, due to the Secretary's serial obstructions, the Hospital is entirely unable to access this hearing.

77. First, despite the fact that CCMC had filed jurisdictionally valid appeals (Exhibit 5 at 8, Exhibit 6 at 10), was granted expedited judicial review, and timely filed its complaints in federal court, the Secretary then moved over CCMC's objection to remand the case back to the Secretary. Exhibit 1; Exhibit 2. The Secretary purportedly did so to reevaluate the pending claims in light of the *Allina II* decision, which held their treatment of DSH Part C Days (as applicable in the year at issue) to be unlawful. Exhibit 1.

78. Following the court remand, the CMS Administrator should have ordered CCMC's appeals to be remanded to and reinstated at the Board. This intermediate remand to the Board was required because the Board was the entity within CMS that had been handling CCMC's appeals prior to the remand from the court appeals. Further, and critically, this intermediate remand to the Board was necessary to afford the Hospital its statutory appeal rights under 42 U.S.C. § 1395oo. Accordingly, it was not an "appropriate remand order," 42 C.F.R. § 405.1877(g)(2), to skip in the process the entity that had handled the appeals—the Board.

79.     To be sure, the Board might have then remanded CCMC's appeals to the Medicare contractor.  But if the CMS Administrator had properly returned the appeals to the Board to be reinstated and then remanded to the Medicare contractor, CCMC would have had the opportunity to seek reinstatement of the original appeals, under 42 C.F.R. § 405.1885 and Board Rule 47.1, and to receive the Board hearing that it is entitled to in its original appeals.

80.     Instead, however, CMS circumvented this reinstatement process by skipping the Board and remanding the cases directly back to the Medicare contractors.

81.     CCMC has done everything required of it by statute to challenge the Part C days policy, and should not have had to do anything further, including incurring the expense and other disadvantages of filing a new appeal based on the contractor's identical determination on remand, to preserve its right to a hearing in its appeals of the Part C days policy.

82.     Yet CCMC now has no other means of challenging the Secretary's unlawful application of the renewed, retroactive Part C days policy to determine the Hospital's FY 2013 payments.  The Secretary caused CCMC's jurisdictionally valid appeals to be remanded from court, Exhibit 1, the CMS Administrator's remand order did not order the appeals to be reinstated to the Board in the first instance, Exhibit 7, and as a consequence CCMC cannot now seek reinstatement of its original appeals at the Board, 42 C.F.R. § 405.1885, Board Rule 47.1, along with the attendant benefits of those appeals, including there being no dispute that, should CCMC ultimately prevail on the merits, it is entitled to interest accruing for the roughly nine years between the contractor's original NPR, in 2015, and revised NPR in 2024.

**CLAIM FOR RELIEF**

**Count I**
**Mandamus Act (28 U.S.C. § 1361)**

83.     CCMC hereby incorporates by reference all preceding paragraphs of this Complaint.

84.     Under the Mandamus Act (28 U.S.C. § 1361), federal district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Jurisdiction under the Mandamus Act is available if the plaintiff has a clear right to relief, the defendant has a clear duty to act, and there is no other adequate remedy available to the plaintiff. *See In re Medicare Reimbursement Litig.*, 414 F.3d at 10. A defendant has a clear duty to act where "the duty to be performed is ministerial and the obligation to act peremptory and clearly defined." *Shoshone Bannock Tribes v. Reno*, 56 F.3d 1476 (D.C. Cir. 1995) (quoting *13th Reg'l Corp. v. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980).

85.     CCMC has a clear right to access its jurisdictionally proper original appeal hearing. As the Board found, CCMC satisfied the jurisdictional prerequisites for a Board appeal. *See* Exhibit 5 at 8 ("The Board finds that . . . [i]t has jurisdiction over the matter for the subject years and that the participants in these group appeals are entitled to a hearing before the Board"); Exhibit 6 at 10 ("The Board finds that . . . [i]t has jurisdiction over the matter from the original NPRs[] for the subject years and that the remaining participants in these group appeals are entitled to a hearing before the Board"). Therefore CCMC "*may obtain a hearing with respect to such cost report* by [the Board]," § 1395oo(a) (emphasis added). Further, if it were to prevail in its challenge, CCMC is also statutorily entitled to interest on its claim, to be calculated based on the date of CCMC's

original NPR determination, November 23, 2015, that preceded the original appeal. 42 U.S.C. §§ 1395oo(f)(2), (f)(3).

86.    The Secretary has a clear duty to provide this hearing. Here, to provide CCMC with its statutorily-entitled hearing, the Secretary (by way of the CMS Administrator) need only to perform the ministerial duty of remanding the Hospital's original appeals to the Board in the first instance.

87.    CCMC has no adequate alternative remedy to this Court's mandamus relief. CCMC has no other means of reinstating its original appeals challenging the Secretary's unlawful Part C days policy as it applies to its FY 2013 payments. The Secretary caused CCMC's jurisdictionally valid appeals to be remanded from court, Exhibit 1, the CMS Administrator's remand order did not order the appeals to be reinstated to the Board in the first instance, Exhibit 7, and CCMC cannot now seek reinstatement of its original appeals at the Board, 42 C.F.R. § 405.1885, Board Rule 47.1.

88.    This Court should therefore exercise its mandamus jurisdiction to compel the Secretary to carry out its clear ministerial duty to remand CCMC's original appeals, Board Numbers 16-1393GC and 16-1303GC, to the Board, to allow the Hospital to pursue its statutorily-provided appeals on this legal issue and to retain indisputably the original November 23, 2015 NPR date as the basis for potential future interest calculations. 28 U.S.C. § 1361; *see also id.* § 1651(a) (All Writs Act).

### REQUEST FOR RELIEF

WHEREFORE, the Hospital respectfully requests that this Court enter an order:

1.    Compelling the Secretary to remand this matter back to the CMS Administrator with instructions to remand CCMC's original Board appeals directly to the Board to allow CCMC to pursue a hearing on the issue therein; and

2.    For CCMC's costs and reasonable attorney's fees, and for such other and further relief that the Court deems appropriate.

Respectfully submitted,


Dated:  March 14, 2025                    s/ *Sven Collins*
                                          Sven Collins (Colorado Bar No. 30890)
                                          HOOPER LUNDY & BOOKMAN, P.C.
                                          999 18th Street, Suite 3000
                                          Denver, CO 80202
                                          (720) 687 2850
                                          scollins@hooperlundy.com

                                          Kelly A. Carroll (DC Bar No. 1018485)
                                          Rachel L. Zacharias (DC Bar No. 1779837)
                                          HOOPER LUNDY & BOOKMAN, P.C.
                                          401 9th Street, NW, Suite 550
                                          Washington, DC 20004
                                          (202) 580 7700
                                          kcarroll@hooperlundy.com
                                          rzacharias@hooperlundy.com


                                          *Counsel for Plaintiffs*